STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael R. STURGEON, Defendant-Appellant.

Court of Appeals

*No. 98–2885–CR. Submitted on briefs August 6, 1999.—Decided November 17, 1999.*

(Also reported in 605 N.W.2d 589.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Terry Evan Williams* of *Williams Law Office* of Delavan.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1.  NETTESHEIM, J.   In this case, we set out the proper methodology for evaluating a guilty plea withdrawal request based on the postplea discovery of exculpatory evidence within the exclusive control of the State.

¶ 2.  Following his plea of guilty, Michael R. Sturgeon was convicted of burglary as a party to the crime pursuant to §§ 943.10(1)(a) and 939.05(1), STATS. The issue on appeal is whether the trial court properly denied Sturgeon's request to withdraw his guilty plea after sentencing. Because the State failed to provide Sturgeon with exculpatory evidence related to his confession to the police and because such failure caused Sturgeon to plead guilty, we reverse the judgment of conviction and the order denying postconviction relief. We remand for further postconviction proceedings in accord with this opinion.

## *Facts and Procedural History*

¶ 3.  The relevant facts, although not disputed, are somewhat lengthy. On January 13, 1997, the State filed a criminal complaint against Sturgeon, alleging burglary and misdemeanor theft as a party to the crime. The complaint was based principally upon the confessions of Sturgeon and his alleged cohorts,

Andrew King and R.J.W., a juvenile. All three confessions represented that Sturgeon, R.J.W. and King went to the home of R.J.W.'s grandmother, that Sturgeon knocked on the door and asked for a fictitious person, and that while Sturgeon kept the grandmother occupied, R.J.W. entered the house and stole his grandmother's purse. As to Sturgeon's confession, the complaint alleged:

> Officer Russell Carstensen of the City of Lake Geneva Police Department reports that on November 30, 1996, he spoke to Michael Sturgeon. After advising Sturgeon of his rights under the Miranda decision, Sturgeon stated that he would waive his rights and speak to the officer. Sturgeon stated that he was with R.J.W. and Andy King when they walked to the house of R.J.W.'s grandmother in the City of Lake Geneva. Sturgeon stated that it was he who knocked on the back door and asked for Jacob and kept Mrs. [W.] busy while R.J.W. and Andy King were in the front of the house. Sturgeon stated that all of a sudden, King was running away from the house and yelled at Sturgeon to run and Sturgeon ran from the back of the house and over to the Mobil Station. Sturgeon further stated that King told him that he dumped the purse and its contents in town.

¶ 4. Sturgeon was represented by Attorney David Danz. Sturgeon admitted to Danz that while he did go to the door and ask R.J.W.'s grandmother for Jacob, he did not know that Jacob was a fictitious person and he did not know that R.J.W. and King planned to steal the grandmother's purse.

491

¶ 5.   On March 11, 1997, Sturgeon filed a Demand for Discovery and Inspection.[1] This demand included a request for "[a]ny written or recorded statements made by the defendant," "[w]ritten summaries of all oral statements of the defendant," and "[a]ll exculpatory evidence." As a result, Danz examined the district attorney's file and discovered Carstensen's police report detailing Sturgeon's confession. The confession itself was not reduced to writing.

¶ 6.   At the preliminary hearing, R.J.W. testified in accord with his confession, implicating Sturgeon in the planning and execution of the theft and burglary. Carstensen also testified, confirming that Sturgeon had admitted his involvement. He testified:

> [Sturgeon] told me that he was supposed to go to the back door, knock on the back door and then when Mrs. [W.] came to the back door, he was supposed to ask if Jacob was home. There was no Jacob there, but he was just supposed to distract her long enough for [R.J.W.] and Andy to go to the front door.

Based on this and other evidence, Sturgeon was bound over for trial, and the State filed an information alleging the same burglary and theft charges recited in the complaint.

¶ 7.   Sturgeon then filed a motion to suppress his confession, contending that his confession was not voluntary. At the hearing on this motion, City of Lake Geneva Police Chief Richard Meinel testified that he also was present during Carstensen's interview with Sturgeon. Meinel confirmed Carstensen's versions of

---

[1] This document is not part of the appellate record. However, it is included in the appendix to Sturgeon's brief-in-chief, and the State does not dispute that the discovery demand was filed.

Sturgeon's confession as represented in the criminal complaint and at the preliminary hearing. Carstensen also testified, revealing that he had questioned Sturgeon another time at school about other incidents but "nothing to do with this incident." The trial court denied Sturgeon's motion to suppress.

¶ 8. Danz then conducted plea agreement discussions with the State. He negotiated an agreement whereby Sturgeon would plead guilty to the burglary charge and the State would dismiss and read in the theft charge. In addition, the State agreed to not seek prison time. Faced with Sturgeon's confession and the incriminating testimony of R.J.W., the accomplice, Danz recommended that Sturgeon accept the proposal. Sturgeon agreed and pled guilty. The trial court withheld sentence and placed Sturgeon on probation for five years. The conditions of probation included confinement in the county jail for 120 days.

¶ 9. Represented by new counsel, Sturgeon moved to withdraw his guilty plea. In conjunction with the motion, Sturgeon sought an order directing the Lake Geneva police department to produce "any and all notes, transcripts and other materials concerning or related to any statements given by Michael S. Sturgeon to officers [of the department]." The motion stated that Sturgeon had reason to believe that his statements to the police included his exculpatory assertion that he was unaware of R.J.W. and King's plan to steal from R.J.W.'s grandmother. The State agreed to voluntarily turn over the requested materials to Sturgeon's new counsel.

¶ 10. These materials revealed a transcript of an interview of Sturgeon by Carstensen and other officers at Badger High School on December 3, 1996, three days

after Carstensen's initial interview of Sturgeon.[2] During this interview, the officers questioned Sturgeon about various matters under investigation. Interspersed in this conversation were questions about the instant case. During this phase of the questioning, Sturgeon stated that he received no money from the theft, "they used [him] to go to the door," and "[he] didn't have the slightest clue what was going on until the purse ended up with [them]." Explaining why this document was not included in the district attorney's file when Danz examined the file, the State indicated that "[t]he police did not forward [the transcript of this interview] to us right away because it was primarily on another case."

¶ 11.   At this hearing, the assistant district attorney also revealed that she had been advised by Meinel, who was present at Carstensen's initial interrogation of Sturgeon, that Sturgeon had originally told the police during the interview that he was unaware of the criminal intentions of R.J.W. and King. The State acknowledged that this exculpatory version of Sturgeon's role in the event was not included in Carstensen's police report documenting Sturgeon's confession.

¶ 12.   The trial court rejected Sturgeon's plea withdrawal motion. In support, the court cited to the plea colloquy that established Sturgeon's understanding of the intent element of burglary and his knowledge of the criminal scheme afoot. The court also alluded to Sturgeon's failure to question Carstensen or Meinel at the preliminary hearing or motion to suppress regarding his exculpatory statements. In addition, the court noted that the failure of the police to forward the report

---

[2] The transcript does not bear a date, but the parties do not dispute the date of the interview.

or the transcript of the Badger High School interview was understandable since "it was . . . an investigatory file that had to do with a number of pending matters." Thus, the court concluded that Sturgeon had not established a manifest necessity for withdrawal of his guilty plea.

¶ 13. After the trial court made its ruling, the case took an unusual evidentiary turn. Sturgeon's post-conviction counsel asked permission to present Sturgeon's testimony. The trial court allowed an offer of proof and Sturgeon then testified under oath, stating his exculpatory version of the events. He also stated that he felt he had no choice but to plead guilty in light of R.J.W.'s incriminating testimony and the confession that he had given to Carstensen. At the conclusion of Sturgeon's offer of proof testimony, the trial court confirmed its prior ruling without further comment.

### *Discussion*

### *1. Standard of Review and Test for Plea Withdrawal*

¶ 14. A motion for withdrawal of a plea is addressed to the trial court's discretion. *See State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 635, 579 N.W.2d 698, 708, *cert. denied*, 119 S. Ct. 413 (1998). In order to sustain this discretionary decision, we must ensure that the trial court's determination was made upon the facts of record and in reliance on the appropriate and applicable law. *See id.*

¶ 15. When a motion to withdraw a plea is made after sentencing, the defendant must establish by clear and convincing evidence that withdrawal is necessary to correct a manifest injustice. *See State v. Hatcher*, 83 Wis. 2d 559, 564, 266 N.W.2d 320, 323 (1978). Here,

Sturgeon's plea withdrawal request is based upon his claim that the State violated his constitutional due process rights by failing to produce exculpatory evidence within its exclusive control. When a defendant's assertion of a violation of a constitutional right forms the basis for a plea withdrawal request, he or she may withdraw the plea as a matter of right by demonstrating: (1) that a violation of a constitutional right has occurred; (2) that this violation caused the defendant to plead guilty; and (3) that at the time of the plea, the defendant was unaware of the potential constitutional challenge to the case against him or her because of the violation. *See id.* at 565, 266 N.W.2d at 323.[3]

¶ 16.    When reviewing questions of ultimate constitutional fact, we do not apply the conventional clearly erroneous test. Instead, we review such determinations independently to determine whether any constitutional principles have been offended. *See State v. Clappes*, 136 Wis. 2d 222, 235, 401 N.W.2d 759, 765 (1987); *see also Miller v. Fenton*, 474 U.S. 104, 110–18 (1985); *State v. Hoyt*, 21 Wis. 2d 284, 305–06, 128 N.W.2d 645, 656 (1964) (per curiam) (Wilkie, J., concurring). However, the underlying historical facts, or in the words of *Miller*, "subsidiary factual questions," remain subject to the clearly erroneous test. *See Miller*, 474 U.S. at 112.

---

[3] Recently, the Wisconsin Supreme Court clarified that the harmless error doctrine applies in a plea withdrawal setting in an appeal taken pursuant to § 971.31(10), STATS. *See State v. Armstrong*, 225 Wis. 2d 121, 122, 591 N.W.2d 604, 604 (1999). This appeal, however, is not taken pursuant to § 971.31(10). We therefore apply the *Hatcher* analysis.

## 2.  The Hatcher Analysis

### a.  Violation of Constitutional Right

¶ 17.   Under *Hatcher*, we first examine whether Sturgeon has established a constitutional violation. A defendant has a constitutional right to all material exculpatory evidence in the hands of the prosecutor. *See State v. DelReal*, 225 Wis. 2d 565, 570, 593 N.W.2d 461, 464 (Ct. App. 1999); *see also Brady v. Maryland*, 373 U.S. 83, 86 (1963). Sturgeon contends that the State failed to comply with this duty to turn over such evidence.

¶ 18.   Here, the evidence is undoubtedly exculpatory because it reveals Sturgeon twice denying any knowing involvement in the crime. Nonetheless, the State contends that no constitutional violation occurred because the evidence was not within the exclusive control of the prosecution.[4] The State says

---

[4] The State reads Sturgeon's brief to also allege a violation of § 971.23(1)(b), STATS., of the criminal discovery statute. The State contends that it complied with this statute because Carstensen's police report of the original interview with Sturgeon constituted, in the words of the statute, "A written summary of all oral statements of the defendant which the district attorney plans to use in the course of the trial." *Id.*

We do not share the State's reading of Sturgeon's brief. Although Sturgeon refers to his discovery demand, he develops no argument under this subsection of the discovery statute. Rather, he claims a due process violation based upon the State's alleged failure to divulge exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). That type of violation is covered by para. (1)(h) of the discovery statute. *See* § 971.23(1)(h), STATS. We read Sturgeon's constitutional argument to invoke this paragraph of the statute.

this is so because Sturgeon knew that he had made the exculpatory statements to the police and even shared this information with Danz early on in the proceedings. Echoing the trial court's reasoning, the State contends that Danz could have questioned the officers at the preliminary hearing or the motion to suppress hearing about this information.[5]

¶ 19.   In support, the State cites to *State v. Armstrong*, 110 Wis. 2d 555, 329 N.W.2d 386 (1983). There, Armstrong contended that the State had breached its duty to disclose exculpatory evidence by failing to provide the defense with an accurate copy of a parking ticket that had been issued to him. *See id.* at 579, 329 N.W.2d at 398. The supreme court disagreed, ruling that the evidence was not within the exclusive possession of the State because "[t]he defendant knew he had been ticketed. He paid the ticket by check and the canceled check was returned to him." *Id.* at 580, 329 N.W.2d at 398.

¶ 20.   We do not see this as an *Armstrong* case. There, the parking ticket was tangible, physical evidence, a copy of which had originally been in Armstrong's possession. Moreover, Armstrong had other remaining tangible evidence—his canceled check—which verified the issuance of the parking ticket. Here, Sturgeon had nothing but his contention that his statements to the police included his denials. He had no tangible evidence that supported that contention.

¶ 21.   We acknowledge that a defendant will not be heard to claim that evidence is within the exclusive

---

[5] The State does not raise any claim that the disputed evidence in this case would not have been admissible under the rules of evidence, particularly ch. 908, STATS., governing hearsay evidence.

control of the State "where the witness is available to the defense and the record fails to disclose an excuse for the defense's failure to question him." *State v. Sarinske*, 91 Wis. 2d 14, 36, 280 N.W.2d 725, 735 (1979). In *Sarinske*, however, the witnesses who were called by the defense were civilians. Here, while Carstensen and Meinel were available as witnesses to Sturgeon, they also were police officers who were more clearly aligned with the position of the State. *See State v. Martinez*, 166 Wis. 2d 250, 260, 479 N.W.2d 224, 229 (Ct. App. 1991). ("For purposes of the criminal discovery statutes, we view an investigative police agency which holds relevant evidence as an arm of the prosecution.")

¶ 22.   More importantly, the record in this case reveals legitimate reasons for Sturgeon's failure to pursue questioning at the preliminary hearing about the possible exculpatory evidence. "[A] preliminary hearing is not a proper forum to choose between conflicting facts or inferences, or to weigh the state's evidence against evidence favorable to the defendant." *State v. Dunn*, 121 Wis. 2d 389, 398, 359 N.W.2d 151, 155 (1984). Thus, if Sturgeon had introduced his exculpatory statements by questioning Carstensen at the preliminary hearing, the court still would have been required to bind Sturgeon over for trial.

¶ 23.   In addition, the scope of a preliminary hearing is very narrow. A preliminary hearing cannot "delve into the credibility of a witness." *Id.* at 397, 359 N.W.2d at 154. Arguably, any cross-examination of Carstensen about his failure to include Sturgeon's exculpatory statements would have constituted impeachment, traveling to Carstensen's credibility. That kind of attack is off limits in a preliminary hearing setting.

499

¶ 24. In short, Sturgeon had little, if any, motivation to delve into his claimed exculpatory statements. *Sarinske* does not say that simply because a defendant could have inquired about possible exculpatory evidence, the evidence is not within the exclusive control of the State. Rather, *Sarinske* says that the evidence is not within the exclusive control of the State if "the record fails to disclose an excuse for the defense's failure to question." *Sarinske*, 91 Wis. 2d at 36, 280 N.W.2d at 735. Here, the record discloses logical and sound reasons why Sturgeon did not explore any possible exculpatory evidence questioning at the preliminary hearing.

¶ 25. The same is true regarding the motion to suppress. Sturgeon's motion contended that his confession was involuntary because he, then sixteen years old, had been questioned without his mother present. He also contended that the police had threatened him with prosecution if he did not cooperate with the interrogation. The goal of this motion was to gain suppression of the confession—not to explore possible exculpatory evidence. Again, simply because Sturgeon could have questioned the officers about possible exculpatory evidence at this proceeding does not mean that the State did not have exclusive control of the evidence. Given the focus and purpose of the motion to suppress, the record demonstrates a logical and sound reason why Sturgeon did not explore any possible exculpatory evidence at this proceeding.

¶ 26. In summary, we see a marked difference between a defendant's exculpatory version of an event presented to his lawyer and the fact that the prosecution has in its exclusive possession evidence which independently corroborates that version. Sturgeon's denial of any knowledge of the criminal enterprise of

R.J.W. and King in both of the police interviews was clearly exculpatory. Carstensen's police report of Sturgeon's "confession" made no reference to this denial. Nor was Meinel's personal knowledge of Sturgeon's denial during this interview shared with the defense. The same is true of the later interview of Sturgeon at the high school. The transcript of this interview reveals Sturgeon again denying knowledge of the criminal plan. As with Sturgeon's other denials, this document was also not shared with the defense.

¶ 27.   Under our independent standard of review of the ultimate constitutional fact question, we hold that the evidence was exculpatory and that it was within the exclusive control of the prosecution. As such, Sturgeon has established a constitutional violation.

b.   Awareness of the Potential Constitutional Challenge Because of the Violation

¶ 28.   Before addressing the second *Hatcher* factor, causation, we next discuss the third factor—whether, at the time of the plea, the defendant was unaware of the potential constitutional challenge to the case because of the violation. *See Hatcher*, 83 Wis. 2d at 565, 266 N.W.2d at 323. We do so because this question is governed, in large part, by our previous discussion of the "exclusive control" factor.

¶ 29.   Sturgeon obviously knew that he had given the police an exculpatory version of the event during both of the interviews. However, as we have already noted, a defendant's knowledge that he or she provided an exculpatory version of the event is not the equivalent of knowledge that the police have indepen-

dent evidence that corroborates the exculpatory version.

¶ 30. What Sturgeon did not know was that his exculpatory version had been memorialized in the police report of the Badger High School interview and that it also was within the personal knowledge and recollection of Meinel who was present at the initial interview. That withheld evidence, of which Sturgeon was unaware, represents "the potential constitutional challenge" under *Hatcher*. Under our independent standard of review of the constitutional fact question, we hold that Sturgeon has satisfied this third factor under *Hatcher*.

### c. Causation

¶ 31. Finally, we examine the second *Hatcher* factor—whether the constitutional violation caused Sturgeon to plead guilty. *See id.*

¶ 32. Although *Hatcher* sets out the factors that must be considered in a plea withdrawal request based upon a constitutional violation, *Hatcher* was not an exculpatory evidence case.[6] The State correctly observes that there is no Wisconsin precedent addressing a plea withdrawal request based on the discovery of exculpatory evidence. The Wisconsin cases to date have discussed the discovery of such evidence only in a trial setting. *See, e.g., DelReal*, 225 Wis. 2d 565, 593 N.W.2d 461; *State v. Randall*, 197 Wis. 2d 29, 539 N.W.2d 708 (Ct. App. 1995). In that situation, the relevant inquiry is whether there is a reasonable probability that had the evidence been disclosed to the defense the

---

[6] *Hatcher* was a speedy trial case. *See State v. Hatcher*, 83 Wis. 2d 559, 563, 266 N.W.2d 320, 322 (1978).

result of the proceeding would have been different. *See DelReal*, 225 Wis. 2d at 570, 593 N.W.2d at 464.

¶ 33.   Despite the lack of Wisconsin law, the State has provided us with helpful guidance from other jurisdictions on this question. In *Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995), the court analyzed an exculpatory evidence violation claim as the equivalent of a claim that the plea had not been intelligently and voluntarily entered. *See id*. at 1453. The court explained that the evidence withheld must be relevant, meaning that there is a reasonable probability that, *but for the failure to disclose*, the defendant would not have pled. *See id*. at 1454. Stated differently, the court must be convinced that the undisclosed information was controlling in the defendant's decision to plead. *See id*. *Sanchez* held that this is an objective test that requires the court to consider the likely persuasiveness of the withheld information and other factors. *See id*.

¶ 34.   Utilizing a somewhat similar approach, the Missouri Court of Appeals said in *Scroggins v. State*, 859 S.W.2d 704 (Mo. Ct. App. 1993), that the test is whether, even in light of the undisclosed evidence, the defendant faced a significant risk of conviction. *See id*. at 709. In addition, the trial court should also consider what benefits the defendant obtained in exchange for his or her guilty plea. *See id*. Another court has said that a relevant inquiry is the validity of the plea colloquy. *See Campbell v. Marshall*, 769 F.2d 314, 324 (6th Cir. 1985).

¶ 35.   We agree that these cases provide useful guidance for evaluating a plea withdrawal request based upon a postplea discovery of exculpatory evidence. We conclude that the relevant inquiry is whether there is a reasonable probability that, but for

the failure to disclose, the defendant would have refused to plead and would have insisted on going to trial. *See Sanchez*, 50 F.3d at 1454.

¶ 36.   The factors which may bear upon this question include: (1) the relative strength and weakness of the State's case and the defendant's case; (2) the persuasiveness of the withheld evidence; (3) the reasons, if any, expressed by the defendant for choosing to plead guilty; (4) the benefits obtained by the defendant in exchange for the plea; and (5) the thoroughness of the plea colloquy. These are examples of relevant considerations and are not intended to be exhaustive. The particular case may present other relevant considerations.

¶ 37.   In the trial court, the parties cited little case law in support of their respective positions. They did not touch upon *Hatcher* or the other related line of cases we have cited in this opinion. The trial court's bench decision does address some of the considerations which we have noted (i.e., the thoroughness of the plea colloquy). However, the court did not address the other factors we have noted as possibly relevant.

¶ 38.   Moreover, the trial court's decision is questionable in certain respects. The court noted that Sturgeon had failed to pursue the opportunities to explore possible exculpatory evidence at the preliminary hearing and at the motion to suppress hearing. While that is true, as we have noted, that was not the purpose or focus of those proceedings. In addition, the court stated that the failure to produce the evidence was not a "ruse." But whether the State acted in good or bad faith is irrelevant. *See Nelson v. State*, 59 Wis. 2d 474, 479, 208 N.W.2d 410, 412 (1973); *Brady*, 373 U.S. at 87. The court also excused the absence of the Badger High School interview transcript from the district

attorney's file because it was an "investigatory file that had to do with a number of pending matters." But "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf . . . including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). As we noted earlier, "[f]or purposes of the criminal discovery statutes, we view an investigative police agency which holds relevant evidence as an arm of the prosecution." *Martinez*, 166 Wis. 2d at 260, 479 N.W.2d at 229.

¶ 39.   We now address whether the trial court correctly rejected Sturgeon's plea withdrawal request in light of the relevant factors that we have identified. We first consider the relative strength and weakness of the State's case and Sturgeon's case. Sturgeon claims that he did not intend to commit the crimes charged because he did not know that "Jacob" was a fictitious person and that he was unaware that R.J.W. and King planned to steal the grandmother's purse. The State's ability to establish the intent element relied on two pieces of evidence—Sturgeon's confession and R.J.W.'s testimony against Sturgeon at the preliminary hearing. However, the reliability of the confession is now put in question by the withheld exculpatory evidence that has Sturgeon twice disavowing any knowledge of the criminal enterprise of R.J.W. and King. And while R.J.W.'s testimony clearly supports the State's case, we must bear in mind that this evidence comes from one also involved in the crimes. A fact finder would assess such testimony with a healthy dose of skepticism. We conclude that this factor weighs in Sturgeon's favor.

¶ 40.   For the same reasons, we conclude that the persuasiveness of the withheld evidence weighs in Sturgeon's favor. The withheld evidence not only posits that Sturgeon did not harbor any criminal intent, but it

also seriously impeaches Carstensen as a witness for the State.

¶ 41.   Next we consider why Sturgeon chose to plead guilty. In his offer of proof, Sturgeon testified that he felt that he had no choice in light of the confession he made to the police and R.J.W.'s testimony. We deem that a plausible explanation, particularly as to the confession which Sturgeon made to the police. It is unlikely that a fact finder would opt for a defendant's claim of innocence in the face of a police officer's testimony that the defendant confessed. We conclude that this factor also weighs in Sturgeon's favor.

¶ 42.   Next we consider the benefits obtained by Sturgeon in exchange for the plea. Under the plea agreement, Sturgeon pled guilty to the felony burglary charge and the misdemeanor theft charge was dismissed and read in. The State agreed to not seek a prison sentence but it retained the right to seek appropriate conditions of probation. As a result, the trial court withheld a sentence and placed Sturgeon on probation with a jail term of 120 days as a condition of probation. We consider this factor as a wash between the State and Sturgeon. The State obtained a conviction to the felony charge, dismissing the misdemeanor, but on a read-in basis. Sturgeon obtained the State's agreement to not seek prison time, but the State retained the right to seek confinement time as a condition of probation. This factor weighs neither for nor against either party.

¶ 43.   Finally, we consider the plea colloquy. Here, the trial court's colloquy with Sturgeon was thorough and complete. Thus, this factor weighs in favor of the State. However, this is the least persuasive of the factors because a plea colloquy, no matter how thorough, could never address a situation in which the

State has withheld exculpatory evidence because such an event is unknown to the trial court at the time of the plea.

¶ 44.   We conclude that the record in this case establishes, as a matter of law, that Sturgeon has demonstrated that the constitutional violation caused him to plead guilty. As such, he has carried his burden of demonstrating that a withdrawal of his plea is necessary to avoid a manifest injustice.

## *Conclusion*

¶ 45.   We hold that the evidence in question was exculpatory and within the exclusive control of the State. Thus, Sturgeon has established a constitutional violation. We also hold that at the time of his plea, Sturgeon was unaware of the potential constitutional challenge because of the violation. Finally, we hold that the constitutional violation caused Sturgeon to enter his plea. We reverse the order denying Sturgeon's post-conviction motion to withdraw his plea of guilty. We remand for further proceedings on the burglary and misdemeanor theft charges recited in the information.

*By the Court.*—Judgment and order reversed and cause remanded.