775 A.2d 576 (2001)
341 N.J. Super. 448
STATE of New Jersey, Plaintiff-Respondent,
v.
Phillip PARSONS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted June 11, 2001.
Decided June 26, 2001.
*578 Peter A. Garcia, Acting Public Defender, for appellant (Bernadette N. DeCastro, Assistant Deputy Public Defender, of counsel and on the brief).
Glenn Berman, Middlesex County Prosecutor, for respondent (Simon Louis Rosenbach, Assistant Prosecutor, of counsel and on the brief).
Before Judges PETRELLA and BAIME.
*577 The opinion of the court was delivered by BAIME, P.J.A.D.
This appeal requires us to define the standard applicable to a motion to withdraw a guilty plea based upon the State's concealment of exculpatory evidence. We hold that the court should grant such a motion if it is established that there is a reasonable probability that but for the State's failure to disclose, the defendant would not have pled guilty. Applying that standard, we conclude that the Law Division erred by denying defendant's motion to retract.

I.
We need not recount the facts at length. Sergeant Paul Schuster of the New Brunswick Police Department received information from a confidential informant that Phillip Parsons and Ranique Carmen habitually sold drugs in an apartment located at 176 Memorial Parkway. Schuster arranged for his informant to make a "controlled purchase" of cocaine. Although he did not actually witness the transaction, Schuster observed the informant enter the apartment building and return shortly thereafter with drugs that "field-tested" positive for cocaine. The informant reported to Schuster that he had purchased the drugs from Parsons, who had retrieved them from a seventh floor apartment.
Several days later, Schuster received a telephone call from the informant indicating that Parsons and Carmen were again selling drugs on the grounds of the apartment building. Schuster, accompanied by Detective James Marshall and Raymond Hillyer, proceeded to the site and arrested both Parsons and Carmen. A search of Carmen's clothing revealed marijuana and a set of keys. While waiting in the front of the building with the handcuffed suspects, Schuster directed Marshall to determine whether the keys fit the lock of the seventh floor apartment from which the informant had earlier purchased the drugs. Marshall returned and indicated that the *579 keys fit the lock of the designated apartment unit.
Detectives Marshall and Hillyer remained at the scene while Schuster obtained a search warrant. After obtaining the warrant, the three officers searched the seventh floor apartment. Marshall alone found drugs and weapons in one of the bedrooms.
Parsons was charged with possession of cocaine, possession of cocaine with intent to distribute, possession of cocaine within a school zone with intent to distribute, possession of drug paraphernalia, possession of a prohibited device, and possession of a weapon by a convicted felon. Following the return of the indictment, Parsons filed a motion seeking the release of Detective Marshall's personnel records. In his documentary submissions accompanying the motion, Parsons' attorney noted that he had read news reports indicating that Marshall had been accused of "misusing his position as a police officer." The prosecutor vehemently objected to release of this information. The Law Division denied Parsons' application on the ground that there was no indication there was "any ongoing investigation," and thus the motion was predicated on mere "rumor and speculation."
On the same day that his motion was denied, Parsons entered into an agreement with the State to plead guilty to possession of cocaine in a school zone with intent to distribute and possession of a weapon by a convicted felon. Following entry of Parsons' plea, four separate indictments were returned against Marshall alleging that he was in league with various drug dealers, and that he engaged in prostitution.
Parsons then moved to withdraw his guilty plea, citing the State's discovery violation. In his accompanying affidavit, Parsons' attorney represented that a witness had observed Marshall searching the seventh floor apartment before the police obtained a search warrant. According to the attorney, police reports indicated that Marshall was alone in the bedroom when he later allegedly discovered the drugs and weapons for which Parsons was charged. Although Parsons did not specifically claim that he was innocent, he asserted that he would not have pled guilty had he been aware of the full nature and extent of the Marshall investigation.
Despite the prosecutor's candid acknowledgment that the State had violated Parsons' constitutional rights by failing to disclose the investigation relating to Marshall's activities, he urged the court to uphold the plea. The prosecutor stressed that the evidence seized from the apartment would be admissible under the inevitable discovery doctrine even if Marshall searched the apartment before the police obtained the warrant, as Parsons claimed. The prosecutor added that Parsons neither asserted his innocence nor argued that Marshall had "planted" the drugs in the apartment. The Law Division denied the motion on this basis, finding that Parsons would probably have pled guilty had he been aware of the allegations concerning Marshall's misconduct. Parsons was subsequently sentenced in accordance with the terms of the plea agreement.

II.
We agree with the prosecution's concession that the State violated Parsons' constitutional rights by withholding evidence relating to its investigation of Marshall. In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where [it] is material either to guilt or punishment, irrespective *580 of the good faith or bad faith of the [State]." Id. at 87, 83 S.Ct. at 1196-97, 10 L.Ed.2d at 218. This rule was later expanded, and now applies whether or not the defense specifically requests the exculpatory evidence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), overruling United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); see also State v. Martini, 160 N.J. 248, 268, 734 A.2d 257 (1999); State v. Knight, 145 N.J. 233, 245, 678 A.2d 642 (1996). In order to establish a Brady violation, the defense must demonstrate: (1) the prosecutor failed to disclose the evidence, (2) the evidence was of a favorable character to the defendant, and (3) the evidence was material. Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).
The State concedes that evidence pertaining to the Marshall investigation was favorable to defendant, discoverable under our rules of practice, and should not have been concealed. It argues, however, that the evidence was not material because defendant would have pled guilty, even had the prosecution disclosed the evidence in a timely fashion.
Evidence is considered material for Brady purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494; see also Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome" of the trial. United States v. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494. This is essentially the same standard that we have traditionally applied in determining whether a defense attorney's errors are so egregious as to amount to a Sixth Amendment violation. State v. Landano, 271 N.J.Super. 1, 33, 637 A.2d 1270 (App.Div.1994) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In applying this test where a conviction has followed a full trial, we assess the strength of the State's case, and determine whether introduction of the suppressed evidence would probably have changed the jury's verdict. Id. at 43, 637 A.2d 1270. While we have characterized that analytical process as somewhat "speculative," ibid., it is not too distant from the determination we are often required to make in deciding whether a trial judge's error was so harmful as to compel vitiation of a conviction. See generally, State v. Macon, 57 N.J. 325, 335-36, 273 A.2d 1 (1971) (standard for determining reversible error).
The issue is somewhat different, however, where we are reviewing a denial of a defendant's motion to retract a guilty plea. While we have found no reported New Jersey opinion dealing with the precise question, other jurisdictions have considered the issue. Under the test they have adopted, the defendant must show "a reasonable probability that, but for the failure to disclose, the defendant would not have pled [guilty]." State v. Sturgeon, 231 Wis.2d 487, 503, 605 N.W.2d 589, 596 (Wis. App.1999); see also United States v. Nagra, 147 F.3d 875, 882 (9th Cir.1998); Sanchez v. United States, 50 F.3d 1448, 1454 (9th Cir.1995). "[T]he test for whether the defendant would have chosen to go to trial is an objective one that centers on the likely persuasiveness of the withheld information." United States v. Nagra, 147 F.3d at 882 (quoting Sanchez v. United States, 50 F.3d at 1454). The standard is "whether, even in light of the undisclosed evidence, the defendant faced a significant *581 risk of conviction." State v. Sturgeon, 231 Wis.2d at 503, 605 N.W.2d at 596 (citing Scroggins v. State, 859 S.W.2d 704, 709 (Mo.Ct.App.1993)). The factors that may bear upon the question include: (1) the relative strength and weakness of the State's and the defendant's case, (2) the persuasiveness of the withheld evidence, (3) the reasons, if any, expressed by the defendant for choosing to plead guilty, (4) the benefits obtained by the defendant in exchange for the plea, and (5) the thoroughness of the plea colloquy. Ibid.
These standards have substantial utility. While recognizing the harm potentially caused by a Brady violation, they protect the finality of a conviction against an attack resulting from a mere whimsical change of mind by a disgruntled defendant.
We adopt these rules as supplemented by the following comments. To be effective in a constitutional sense, a plea of guilty must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970). A guilty plea is "a grave and solemn act." Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970). It is "`more than an admission of past conduct,'" but represents as well the "`defendant's consent that judgment of conviction may be entered without a trial.'" Fambo v. Smith, 433 F.Supp. 590, 594 (W.D.N.Y.1977) (quoting Brady v. United States, 397 U.S. at 748, 90 S.Ct. at 1469, 25 L.Ed.2d at 756). A guilty plea constitutes a waiver of the fundamental right to a jury trial, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the right to confront one's accusers, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the right to present witnesses in one's defense, Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and the right to put the prosecution to its proofs, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
Where a guilty plea is the product of the prosecution's misconduct, we should not insist that the defendant proclaim his innocence in order to retract a guilty plea. See State v. Huntley, 129 N.J.Super. 13, 17, 322 A.2d 177 (App.Div.), certif. denied, 66 N.J. 312, 331 A.2d 12 (1974). Faced with criminal charges, a defendant has the right to insist that the State prove him guilty beyond a reasonable doubt. In re Winship, 397 U.S. at 364, 90 S.Ct. at 1073, 25 L.Ed.2d at 375. That is the right we seek to protect. In deciding whether an accused would have gone to trial but for the State's concealment of exculpatory evidence, we should view the defendant's claim indulgently, recognizing that a plea of guilty is an intensely personal decision. That is particularly true where, as here, the defendant seeks to withdraw his guilty plea before sentence. Historically, we "generally exercise [our] discretion liberally [in such a case] to enable [retraction] of the plea and a trial on the merits." State v. Deutsch, 34 N.J. 190, 198, 168 A.2d 12 (1961).

III.
Against this backdrop, we conclude that the suppressed evidence was material to Parsons' guilt or innocence in the context of Brady and its progeny. Specifically, there is a reasonable probability that but for the prosecution's concealment of the exculpatory evidence, Parsons would not have pled guilty. We view the following facts as compelling that conclusion. Evidence of Marshall's official misconduct would have bolstered the defense's claim that the seventh floor apartment was *582 searched before the police applied for a warrant. Although the State claims that the incriminating evidence would nonetheless be saved from suppression under the inevitable discovery rule, that result is by no means clear from the sparse record before us.
Even were we to assume that a motion to suppress would not be successful, the strength of the prosecution's case would be substantially diminished by reason of Marshall's history of misconduct. Assuming the existence of an appropriate foundational basis, we are satisfied that evidence of Marshall's participation in the drug trade would be admissible as tending to establish Parson's innocence. See State v. Gookins, 135 N.J. 42, 46-47, 637 A.2d 1255 (1994); State v. Dickerson, 268 N.J.Super. 33, 37, 632 A.2d 843 (App.Div. 1993). "[A] lower standard of degree of similarity of offenses may justly be required of a defendant using other-crime evidence defensively than is exacted from the State when such evidence is used incriminatorily." State v. Garfole, 76 N.J. 445, 452, 388 A.2d 587 (1978). If, as may be inferred from the concealed evidence, Marshall was in league with drug dealers, he might have had a motive to "frame" Parsons in order to avoid suspicion that he himself was part of an unlawful venture.
At the very least, Marshall's credibility would be subject to attack if he were to appear as a prosecution witness. It is "fundamental" that a defendant has a right to explore evidence tending to show that the State may have a "hold" of some kind over a witness, the mere existence of which might prompt the individual to color his testimony in favor of the prosecution. State v. Holmes, 290 N.J.Super. 302, 312, 675 A.2d 1125 (App.Div.1996). Even absent an express agreement, such a witness may have a motive to curry favor with the State. The defense must have the opportunity to probe the witness's self-interested belief in that respect. Id. at 313, 675 A.2d 1125; State v. Mazur, 158 N.J.Super. 89, 104-05, 385 A.2d 878 (App.Div.), certif. denied, 78 N.J. 399, 396 A.2d 586 (1978); see also Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Sugar, 100 N.J. 214, 230-31, 495 A.2d 90 (1985); State v. Spano, 69 N.J. 231, 235, 353 A.2d 97 (1976); State v. Taylor, 49 N.J. 440, 447-48, 231 A.2d 212 (1967); State v. Pontery, 19 N.J. at 472, 117 A.2d 473; State v. Rodriguez, 262 N.J.Super. 564, 570-71, 621 A.2d 532 (App. Div.1993); State v. Ortiz, 202 N.J.Super. 233, 244, 494 A.2d 822 (App.Div.), certif. denied, 102 N.J. 300, 508 A.2d 187 (1985); State v. Blue, 124 N.J.Super. 276, 282-83, 306 A.2d 469 (App.Div.1973); State v. Zwillman, 112 N.J.Super. 6, 18-19, 270 A.2d 284 (App.Div.1970), certif. denied, 57 N.J. 603, 274 A.2d 56 (1971); State v. Smith, 101 N.J.Super. 10, 13-14, 242 A.2d 870 (App.Div.1968), certif. denied, 53 N.J. 577, 252 A.2d 154 (1969). As we said in State v. Landano, "[i]n an unbroken line of decisions, our courts have held that the pendency of charges or an investigation relating to a prosecution witness is an appropriate topic for cross-examination." 271 N.J.Super. at 40, 637 A.2d 1270. Indeed, our Supreme Court has held that prosecutorial suppression of evidence relating to a witness's possible interest constitutes a violation of the defendant's right to due process. State v. Spano, 69 N.J. at 235, 353 A.2d 97.
We thus conclude that the Law Division judge mistakenly exercised her discretion by denying Parsons' motion to withdraw his guilty plea. Accordingly, the Law Division's order is reversed and the matter is remanded for further proceedings.