935 A.2d 1252

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT
v. J.J.[1], DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 19, 2007—Decided December 11, 2007.

---

[1] In order to protect the privacy of the victim, a minor, the record of these proceedings has been impounded, and we have used initials in this opinion in place of the true names of the parties.

Before Judges WEFING, PARKER and R.B. COLEMAN.

*Law Offices of Robert L. Tarver, Jr.*, attorneys for appellant (*Robert L. Tarver, Jr.*, of counsel and on the brief; *Steven W. Hernandez*, on the brief).

*Paula T. Dow*, Essex County Prosecutor, attorney for respondent (*LeeAnn Cunningham*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

COLEMAN, R.B., J.A.D.

Defendant J.J. appeals from a judgment of conviction entered on April 5, 2005. He was charged under Essex County Accusation No. 05–04–0301 with three counts of first degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a(2)(a), three counts of second degree sexual assault, *N.J.S.A.* 2C:14–2c(3)(a), and two counts of second degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a). Pursuant to a negotiated plea agreement, on April 5, 2005, defendant entered a plea of guilty to two counts of endangering the welfare of a child, as amended to third degree, *N.J.S.A.* 2C:24–4(a). The State agreed to recommend a non-custodial probationary term with Megan's Law requirements and to move to dismiss all remaining counts.

Prior to the date fixed for sentencing, defendant discharged his attorney and hired new counsel. Defendant's new counsel filed a motion to withdraw the guilty plea because defendant believed he had not been advised of all the penal consequences of the plea and because the victim, defendant's daughter, had recanted her accusation against defendant. In his motion, defendant also requested a hearing under *Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963), and claimed ineffective assistance of prior counsel. After hearing oral arguments on November 18, 2005, the Law Division judge denied defendant's request to withdraw his plea but concluded that defendant was entitled to a *Brady* hearing. The judge did not directly rule on the ineffective assistance of counsel issue.

On December 14, 2005, defendant moved to recuse the judge. The judge denied that motion, conducted the *Brady* hearing and determined that no *Brady* violation had occurred. Therefore, in accordance with the negotiated plea agreement, the judge proceeded to sentence defendant, to concurrent five-year terms of probation and compliance with Megan's Law. *See N.J.S.A.* 2C:7–1 to –19.

In the factual statement given by defendant at the April 5, 2005 plea hearing, defendant admitted under oath that he had engaged

in sexual intercourse with B.Y., his biological daughter. However, in support of his motion to withdraw the plea, defendant proffered evidence that tends to contradict his admission of guilt.

Defendant was divorced from B.Y.'s mother, who had custody of the child. Beginning in August 2003, B.Y. lived with defendant periodically. B.Y. had consistent behavioral problems, and she moved back and forth between her parents' residences several times. In the summer of 2004, she moved back with defendant and his fiancée. According to defendant, his relationship with B.Y. was strained during that time. B.Y. began bringing her boyfriend to defendant's home, violating defendant's house rule against her having boys in the house. In addition, when defendant announced that he was going to marry his fiancée, the child became upset and told a friend she did not want him to marry. On September 11, 2004, defendant refused to give B.Y. money for new shoes, and when he sat down with B.Y. to discuss their problems and to discuss school issues, B.Y. reacted negatively.

On September 12, the child telephoned her mother and informed her that defendant raped her. The mother took B.Y. to the police department to make a statement. Thereafter, the child was transported to the hospital, but she left before a physician could examine her. No rape kit examination was conducted. B.Y. returned to the hospital on September 13, and the tests performed on that date were negative for evidence of genital and rectal trauma. Defendant was arrested on September 15, 2004, and as a result of B.Y.'s accusations, he was charged with the offenses included in the instant accusation.

In November 2004, B.Y. recanted her accusation against defendant. She told her mother that she had fabricated the story because she was mad at defendant. When she informed the prosecutor's office of her alleged fabrication, she was told she would be charged with perjury and that she would go to jail. Defendant learned of the recantation in February 2005 and informed his prior counsel of this development. According to defendant, counsel did not further investigate this situation, and

defendant contends he was led to believe the recantation was of no legal significance. On April 5, 2005, in spite of his knowledge that B.Y. had retreated from her original accusation, defendant entered into the negotiated plea agreement described above.

Before the date set for sentencing, he engaged new counsel, moved unsuccessfully to withdraw his guilty plea and to recuse the judge who was presiding over the matter. Defendant now raises the following arguments on appeal:

*POINT I:* THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA BECAUSE HIS PLEA WAS NOT MADE WITH A FULL UNDERSTANDING OF THE CONSEQUENCES OF THE CHARGES.

*POINT II:* THE DEFENDANT SHOULD BE ALLOWED TO WITHDRAW HIS PLEA BECAUSE HE RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL IN THAT HIS ATTORNEY DID NOT INVESTIGATE THE RETRACTION OF DEFENDANT'S ACCUSER, NOR DID HE ADEQUATELY INFORM THE DEFENDANT OF ALL OF THE CONSEQUENCES OF HIS GUILTY PLEA.

    A. The defendant received the ineffective assistance of counsel when his attorney failed to investigate the exculpatory statements made by the victim.

    B. The defendant received the ineffective assistance of counsel when his attorney failed to alert him as to the penal consequences of his plea.

*POINT III:* THE TRIAL COURT ERRED WHEN IT CONSIDERED ONLY THE EVIDENCE FAVORABLE TO THE PROSECUTION AND UNFAVORABLE TO THE DEFENDANT AND HELD THAT NO *BRADY* VIOLATION HAD OCCURRED BECAUSE NO EVIDENCE HAD BEEN WITHHELD FROM THE DEFENDANT.

*POINT IV:* THE TRIAL COURT JUDGE ERRED WHEN HE DID NOT RECUSE HIMSELF, AS THE TRIAL COURT JUDGE MADE EXTRAJUDICIAL COMMENTS THAT SHOWED BIAS AGAINST THE DEFENDANT, SHOWED PARTIALITY TOWARD THE DEFENDANT'S PRIOR COUNSEL AS WELL AS THE PROSECUTION AND RELIED ON FACTS OUTSIDE OF THE RECORD IN ORDER TO JUSTIFY HIS DECISION.

After a careful review of the record and the applicable law, this court reverses in part and affirms in part.

■ Defendant's motion to withdraw his plea was not untimely. The applicable rule provides "[a] motion to withdraw a plea of guilty ... shall be made before sentencing, but the court may permit it to be made thereafter to correct a manifest injustice." *R.* 3:21–1. We are called upon, however, to review the exercise of

discretion by the trial court. A trial court's denial of a defendant's request to withdraw a guilty plea will be reversed on appeal only if there was a "clearly erroneous" exercise of discretion. *State v. Simon,* 161 *N.J.* 416, 444, 737 *A.*2d 1 (1999); *State v. Smullen,* 118 *N.J.* 408, 416, 571 *A.*2d 1305 (1990).

█ The court may vacate a guilty plea or permit its withdrawal if "the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel or by imposing sentence in accordance with the court's previous indications of sentence." *R.* 3:9–3(e). In order to vacate defendant's plea, defendant "must show not only that he was misinformed of the terms of the agreement or that the sentence violated his reasonable expectations, but also that he is prejudiced by enforcement of the agreement." *State v. Howard,* 110 *N.J.* 113, 123, 539 *A.*2d 1203 (1988); *State v. Luckey,* 366 *N.J.Super.* 79, 88, 840 *A.*2d 862 (App.Div.2004). Defendant must then show that the knowledge of these consequences would have impacted his decision to plead guilty. *See Luckey, supra,* 366 *N.J.Super.* at 88, 840 *A.*2d 862; *see also State v. Johnson,* 182 *N.J.* 232, 243, 864 *A.*2d 400 (2005) (defendant must show his mistaken belief was a material factor in his decision to plead guilty).

█ Defendant contends that his guilty plea was not made with a full understanding of the consequences of the plea. "Clarity as to the direct and penal consequences of a defendant's guilty plea promotes the binding resolution of charges because it serves to ensure that a defendant's 'expectations [are] reasonably grounded in the terms of the plea bargain.'" *Johnson, supra,* 182 *N.J.* at 237, 864 *A.*2d 400 (quoting *State v. Marzolf,* 79 *N.J.* 167, 183, 398 *A.*2d 849 (1979)). A "guilty plea must be made voluntarily, knowingly, and intelligently." *Howard, supra,* 110 *N.J.* at 122, 539 *A.*2d 1203; *State v. Taylor,* 80 *N.J.* 353, 362, 403 *A.*2d 889 (1979); *see Brady v. United States,* 397 *U.S.* 742, 748, 90 *S.Ct.* 1463, 1469, 25 *L.Ed.*2d 747, 756 (1970); *see R.* 3:9–2; *see also Johnson, supra,* 182 *N.J.* at 236, 864 *A.*2d 400 (a court may only accept a plea bargain when it acknowledges that it was made

knowingly, intelligently and voluntarily). "For a plea to be know-ing, intelligent and voluntary, the defendant must understand the nature of the charge and the consequences of the plea." *Johnson, supra,* 182 *N.J.* at 236, 864 *A.*2d 400. "Although a court is not responsible for informing a defendant of all consequences flowing from a guilty plea, at a minimum the court must ensure that the defendant is made fully aware of those that are 'direct' and 'penal.' " *Ibid.* "[A] guilty plea entered without sufficient under-standing of the penal consequences is ordinarily invalid. Even misinformation about a collateral consequence may vitiate a guilty plea if the consequence is a material element of the plea." *State v. Jamgochian,* 363 *N.J.Super.* 220, 225, 832 *A.*2d 360 (App.Div.2003) (citations omitted).

In this case, defendant claims that he was not informed that the community supervision provision of his plea would pre-vent him from living with his new wife and her child. Community supervision is considered a direct and penal consequence for these purposes. *Id.* at 224, 832 *A.*2d 360; *see generally State v. Burford,* 163 *N.J.* 16, 21–22, 746 *A.*2d 998, (2000); *State v. Heitzman,* 209 *N.J.Super.* 617, 622, 508 *A.*2d 1161, (App.Div.1986), *aff'd o.b.,* 107 *N.J.* 603, 527 *A.*2d 439 (1987); *State v. Kovack,* 91 *N.J.* 476, 483, 453 *A.*2d 521 (1982).

At defendant's plea hearing, the court notified defendant that "[t]here would be requirements of an Avenel evaluation as well as Megan's Law requirements." The court did not explain the ramifications of the Megan's Law requirements, and the record does not disclose what, if any, explanation was given by defen-dant's attorney. Whereas the court need not explain every possi-ble consequence of a plea, it cannot simply utter a label such as "Megan's Law requirements". *See Jamgochian, supra,* 363 *N.J.Super.* at 227, 832 *A.*2d 360. Such a disclosure does not ensure that defendant fully understands the parameters of his plea.

We note that the defendant signed or initialed a standard form promulgated by the Administrative Office of the Courts entitled

"Additional Questions for Certain Sexual Offenses Committed on or after December 1, 1998," as well as a supplemental form entitled "Additional Questions For Certain Sexual Offenses." These must be answered by a person pleading guilty to enumerated offenses that include endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of a child. The forms are intended to insure and reinforce the disclosure of certain restrictions and limitations applicable to persons pleading guilty to the enumerated sexual offenses. The forms reiterate that a sex offender must register with certain public agencies and re-register upon changing residences. The questions include information about the requirement of community supervision for life, in that the form asks whether the person understands he "will be supervised for at least 15 years as if on parole, and subject to conditions appropriate to protect the public and foster rehabilitation, including ... counseling[,] and other restrictions, which may include restrictions on where you can live, work or travel[.]" We are not satisfied that the questions on the forms would have alerted defendant to the possibility that he could not reside in a home with his new wife and any children she might have, and as we have noted, the record does not reveal that he appreciated or was informed of that risk by the judge or by his attorney at or about the time he agreed to plead guilty.

Accordingly, we are constrained to vacate the order denying defendant's withdrawal of his guilty plea. Now, fully armed with the knowledge of the consequences of the plea, defendant may make an informed decision whether to withdraw his guilty plea or to accept the benefits of the plea agreement; by accepting the plea, defendant avoids the risks associated with a jury trial on all the charges contained in the indictment.[2] Because nothing in the

---

[2] We are aware that in a case such as this, every implication of the guilty plea may not be readily appreciated, but where an unanticipated direct penal consequence of his plea is not recognized before sentencing, a defendant should be permitted to withdraw the guilty plea and proceed to trial on the charges of the indictment. In this instance, defendant's decision is influenced greatly by the

record suggests defendant was told about the particular impact of the Megan's Law requirements upon his new familial situation, we find it is not necessary for us to consider whether a remand might be warranted on the alternative ground asserted by defendant, namely that his guilty plea should be set aside because of ineffective assistance of counsel.

Defendant also argues that the trial court improperly ruled that no *Brady* violation occurred. In *Brady,* the United States Supreme Court held that the government would infringe on a defendant's due process rights if the prosecution were to withhold evidence that is favorable to the accused "where [it] is material either to guilt or punishment, irrespective of the good faith or bad faith of the [State]." *State v. Parsons,* 341 *N.J.Super.* 448, 454, 775 *A.*2d 576 (App.Div.2001) (quoting *Brady, supra,* 373 *U.S.* at 87, 83 *S.Ct.* at 1196–97, 10 *L.Ed.*2d at 218). Where as here, a defendant asserts a *Brady* violation, the defendant must establish "(1) the prosecutor failed to disclose the evidence, (2) the evidence was of a favorable character to the defendant, and (3) the evidence was material." *Parsons, supra,* 341 *N.J.Super.* at 454, 775 *A.*2d 576. Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 *U.S.* 667, 682, 105 *S.Ct.* 3375, 3383, 87 *L.Ed.*2d 481, 494 (1985). A " 'reasonable probability' " is one that is " 'sufficient to undermine confidence in the outcome.' " *Ibid.* (quoting *Strickland v. Washington,* 466 *U.S.* 668, 694, 104 *S.Ct.* 2052, 2068, 80 *L.Ed.*2d 674, 698 (1984)).

When reviewing a defendant's motion to withdraw a guilty plea, the defendant must show " 'a reasonable probability that, but for the failure to disclose, the defendant would not have

---

accuser's attempted recantation, but the uncooperativeness or unavailability of a complaining witness is not such a unique consideration, and it should not be dispositive of a defendant's motion to withdraw a plea affected by other infirmities.

pled [guilty].'" *Parsons, supra,* 341 *N.J.Super.* at 456, 775 *A.*2d 576 (quoting *State v. Sturgeon,* 231 *Wis.*2d 487, 605 *N.W.*2d 589, 596 (Ct.App.1999)). The following five factors may be weighed in assessing this standard:

> (1) the relative strength and weakness of the State's and the defendant's case, (2) the persuasiveness of the withheld evidence, (3) the reasons, if any, expressed by the defendant for choosing to plead guilty, (4) the benefits obtained by the defendant in exchange for the plea, and (5) the thoroughness of the plea colloquy. [*Ibid.*]

The Law Division judge analyzed each element of this test at the conclusion of the December 20, 2005 *Brady* hearing. Although it should be noted the trial judge obviously did not believe B.Y.'s recantation, he ruled:

> So even if a recantation was made by B.Y., on February 22nd, '05, this Court finds that the recantation did not amount to a *Brady* violation because defendant still pled guilty. He got a bargain. His bargain was no jail time. He was aware of the February meeting, and still chose to accept the plea.
>
> It can't be said there's a reasonable probability that but for the State's failure to disclose, the defendant would not have plead [sic] guilty. *See State verses Parsons.*
>
> Again, I want the ruling to be clear. I believe that there was no *Brady* violation. I believe the testimony of the State witnesses that this issue never came during their conference. However, even if I were to find the State's witnesses were lying, and accept defendant's contention, this Court finds that the defendant knew about any alleged contentions, and he voluntarily choose [sic] to ignore them because he wanted no jail time.

We are satisfied that the judge applied the correct analysis, and we are obliged to defer to his factual findings. *State v. Locurto,* 157 *N.J.* 463, 472, 474, 724 *A.*2d 234 (1999). We also agree with the court's legal conclusion. Our finding that defendant should have been permitted to withdraw his plea is based on the nondisclosure of a direct penal consequence of the plea, not upon any disagreement with the trial court's rejection of the claimed *Brady* violation.

▆▆▆▆ Lastly, defendant argues the trial judge should have recused himself. We disagree. A judge shall be disqualified from ruling on a matter "when there is [a] reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or parties to believe so." *R.* 1:12–1(f). To

review a trial judge's alleged prejudicial actions, the appellate court should consider the entire record. *See State v. Zwillman,* 112 *N.J.Super.* 6, 20, 270 *A.2d* 284 (App.Div.1970) (after the completion of a trial, the reviewing court should consider the entire transcript). After reviewing the motion and hearing transcripts, this court is convinced that although the trial judge's comments were sometimes stern, they do not reveal bias or prejudice. Therefore, the judge's denial of defendant's motion for recusal in the context of the *Brady* motion will not be disturbed. On remand, the trial judge should determine, in accordance with the provisions of *R.* 1:12–1, whether there is any reason for him to recuse himself.

We reverse the trial court's denial of defendant's motion to withdraw his guilty plea and remand for a determination whether a more detailed explication of the requirements of Megan's Law would have affected defendant's decision to plead guilty. Affirmed in all other respects.