# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1515-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEON ELEXEY,

    Defendant-Appellant.

_____

Submitted March 23, 2020 – Decided June 18, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-02-0398.

Joseph E. Krakora, Public Defender, attorney for appellant (Illya D. Lichtenberg, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Keon Elexey appeals from the trial court's order denying his post-conviction relief (PCR) petition without an evidentiary hearing arguing:

POINT I

THE PCR COURT ABUSED ITS DISCRETION BY:

1. DENYING DEFENDAN'TS PCR PETITION AND REFUSING TO HOLD AN EVIDENTIARY HEARING WHEN DEFENDANT ESTABLIHED A PRIMA FACIE CASE THAT HIS TRIAL COUNSEL AFFIRMATIVELY MISLED HIM REGARDING THE IMMIGRATION CONSEQUENCES OF HIS GUILTY PLEAS.

2. DENYING AN EVIDENTIARY HEARING IN VIOLATION OF R[ULE] 3:22-10(B).

3. ENGAGING IN SELECTIVE FACT FINDING AND OMITTING MATERIAL FACTS FROM ITS ANALYSIS.

POINT II

THE TRIAL COURT'S DECISION VIOLATED R[ULE] 3:22-11 WHEN IT ENGAGED IN ADDITIONAL FACT FINDING IN THE LEGAL ANAYLSIS.

We disagree and affirm.

Following the return of an indictment charging the then–twenty-nine-year old defendant with five counts of second-degree sexual assault, N.J.S.A. 2C:14-

2

2(c)(4) (counts one, three, five, seven and nine) and five counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts two, four, six, eight and ten) alleging penile-vaginal penetration with a fourteen-year-old victim, defendant pleaded guilty to one count of second-degree sexual assault as amended to allege an act of fellatio.  Under the plea agreement, the State recommended that defendant be sentenced in the third-degree range to a three-year prison term; defendant was sentenced in accordance with the plea agreement.  Sexual abuse of a minor is an "aggravated felony," 8 U.S.C.A. § 1101(a)(43)(A), and subjected defendant to deportation, 8 U.S.C.A. § 1227(a)(2)(A)(iii).

Because the PCR court did not hold an evidentiary hearing, we review de novo both the factual inferences drawn by that court from the record and the court's legal conclusions.  State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).  To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at

687); then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58.

Defendant argues in his merits brief that his trial counsel "misinformed him that he was pleading guilty to a crime which would expose him to mandatory deportation[.]" He claims he would have rejected the plea offer if he had known he was pleading to an aggravated felony that required deportation to his native country, Guyana. He further contends in his pro se letter brief submitted in support of his PCR petition, the "factual assertion alone" that his trial "[c]ounsel advised him that there was . . . 'no real risk' of deportation [and] that 'we have to go through the motions' of answering [']yes['] to questions of guilt and regarding immigration matters," required the PCR court to grant an evidentiary hearing because counsel's alleged advice was delivered "in private consultation . . . and could not be extracted from the record or transcript."

A plea counsel's performance is deficient under the first prong of the Strickland standard if counsel "provides false or misleading information concerning the deportation consequences of a plea of guilty" to a noncitizen defendant. State v. Nuñez-Valdéz, 200 N.J. 129, 138 (2009). We previously

recognized the United States Supreme Court's holding in Padilla v. Kentucky, 559 U.S. 356, 367 (2010), that plea counsel "is required to address, in some manner, the risk of immigration consequences of a non[]citizen defendant's guilty plea," Blake, 444 N.J. Super. at 295. The Padilla Court clarified that counsel's duty is not limited to avoiding dissemination of false or misleading information, but also includes an affirmative duty to inform a defendant entering a guilty plea of the relevant law pertaining to mandatory deportation. 559 U.S. at 369. Counsel's "failure to advise a noncitizen client that a guilty plea will lead to mandatory deportation deprives the client of the effective assistance of counsel guaranteed by the Sixth Amendment." State v. Barros, 425 N.J. Super. 329, 331 (App. Div. 2012). Accordingly, a noncitizen defendant considering whether to plead guilty to an offense must "receive[] correct information concerning all of the relevant material consequences that flow from such a plea." State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012).

Although, we have held that "[i]n the 'numerous situations in which the deportation consequences of a particular plea are unclear . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences,'" Blake, 444 N.J. Super. at 295 (alteration in original) (quoting Padilla, 559 U.S. at 369), "where

the 'terms of the relevant immigration statute are succinct, clear and explicit in defining the removal consequence,' then an attorney is obliged to be 'equally clear,'" Ibid. (quoting Padilla, 559 U.S. at 368-69). "[C]ounsel's failure to point out to a noncitizen client that he or she is pleading to a mandatorily removable offense [constitutes] deficient performance of counsel[.]" Id. at 300 (first alteration in original) (emphasis omitted) (quoting State v. Gaitan, 209 N.J. 339, 380 (2012)).

Unsupported averments, however, do not establish a prima facie case requiring an evidentiary hearing. R. 3:22-10(b); State v. Preciose, 129 N.J. 451, 462-63 (1992). A "defendant must allege specific facts and evidence supporting his allegations," State v. Porter, 216 N.J. 343, 355 (2013), and "do more than make bald assertions that he was denied the effective assistance of counsel," State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

As the PCR court observed in its written opinion, defendant acknowledged that he was aware of the deportation consequences of the plea agreement as evidenced by his answers to questions in the plea forms and his colloquy with the court at the plea hearing. In answer to question seventeen on the plea form, defendant acknowledged he was not a United States citizen, understood his guilty plea may have resulted in his removal from the United States and that he

6

had "the right to seek individualized advice from an attorney about the effect [his] guilty plea [would] have on [his] immigration status." He affirmed that he discussed "the potential immigration consequences" of the plea with counsel and, having been advised of those consequences, he still wanted to plead guilty.

During the plea hearing, the trial court established defendant could read and write English, and confirmed defendant's understanding of the plea forms and the veracity of his answers:

> [THE COURT:] All right, please take a look at a copy of the plea forms that I believe are in front of you. Do you recognize those papers as the ones that you filled out with your attorney today?
>
> [DEFENDANT:] Yes, sir.
>
> [THE COURT:] Were you able to read and understand the paperwork?
>
> [DEFENDANT:] Yes, sir.
>
> [THE COURT:] Did your lawyer explain each question on the form to you?
>
> [DEFENDANT:] Yes, sir.
>
> [THE COURT:] Did you answer every question on the form?
>
> [DEFENDANT:] Yes, sir.
>
> [THE COURT:] Are your answers on those forms the truth?

7

[DEFENDANT:]  Yes, sir.

[THE COURT:]  If I asked you each of those questions now one by one while you are under oath would your answers be the same?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  All right, there appear to be initials on the bottom of the pages; are they your initials?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  On page five there appears to be a signature; is that your signature next to defendant?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  On the last page there appears to be a signature next to the word defendant; is that your signature?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  Did you understand everything your attorney was saying to you?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  Is your understanding of the plea agreement any different now than when we started this hearing?

[DEFENDANT:]  No, sir.

8

After defendant reiterated he was not a United States citizen, the trial court extensively questioned defendant about the immigration consequences of the plea agreement:

> [THE COURT:] All right, let me ask you some questions about that before we proceed with some of the other questions. All right, do you understand that if you are not a United States citizen or National, you may be deported or removed from this by virtue of your plea of guilty?
>
> [DEFENDANT:] Yes, sir.
>
> [THE COURT:] Do you understand that if your plea of guilty is to a crime considered an aggravated felony under federal law, you will be subject to deportation or removal?
>
> [DEFENDANT:] Yes, sir.
>
> [THE COURT:] Do you understand that your plea of guilty could [impact] your ability to reenter the United States if you leave the country?
>
> [DEFENDANT:] Yes, sir.
>
> [THE COURT:] Do you understand that your plea of guilty could [impact] your ability to apply for United States citizenship or other form of residency?
>
> [DEFENDANT:] Yes, sir.
>
> [THE COURT:] Do you understand that this court has no jurisdiction over any decisions made by a federal court or immigration court regarding either your deportation, your ability to re-enter the United States,

or your application for United States citizenship or any other form of residency?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  Do you understand that you have the right to seek legal advice on your immigration status prior to entering this plea of guilty?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  All right, and have you done so?  Have you consulted with an immigration attorney?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  All right, and do you recall the name?

[DEFENDANT:]  No, sir.

[THE COURT:]  All right, but you did so prior to today; correct?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  All right, now, without knowing for sure, let us assume for now that you will be deported. Do you still want to proceed with this guilty plea?

[DEFENDANT:]  Yes, sir.

[THE COURT:]  Having been advised of the possible immigration consequences resulting from your plea, do you still wish to plead guilty?

[DEFENDANT:]  Yes, sir.

10

Defendant subsequently denied that anyone made "any other promises in order to get [him] to plead guilty" other than what the assistant prosecutor stated on the record and what was contained in the plea forms.

Although it is not typical for courts to solely rely on a written plea form when taking a plea, State v. Kovack, 91 N.J. 476, 484 n.1 (1982), we are satisfied that the clear terms of plea form in combination with the trial court's colloquy with defendant belied defendant's naked assertion that counsel misinformed him about deportation consequences. "Defendant may not create a genuine issue of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation." Blake, 444 N.J. Super. at 299. Defendant's bald averments, belied by the record, do not establish a prima facie claim. And, an evidentiary hearing is not to be used to explore PCR claims. See State v. Marshall, 148 N.J. 89, 157-58 (1997). As such, an evidentiary hearing was properly denied.

Similarly, an evidentiary hearing was not required to address defendant's arguments concerning the trial court's conduct during the plea hearing. Neither of those arguments established a prima facie case to warrant a hearing.

We see no merit to defendant's contention that the trial court should have further questioned defendant following defendant's inability to recall his

immigration counsel's name because the "natural inference arising from his responses is whether immigration counsel was consulted at all[.]"  Defendant's failure to remember an attorney's name was not cause to doubt defendant's sworn responses that he had consulted with immigration counsel.

We likewise reject defendant's argument that the trial court's review of the Megan's Law[1] consequences of his plea—including defendant's registration requirement after release from prison and parole supervision for life—"might" cause "[a] man with only a high[-]school education . . . [to] reasonably believe that these statements confirm what he alleges his attorney told him, that he was not going to be deported and he could remain in the United States."  The trial court was obligated to advise defendant of all consequences flowing from his guilty plea.  R. 3:9-2; State v. Barboza, 115 N.J. 415, 420-21 (1989).  Among the consequences that must be explained are those pertaining to Megan's Law.  State v. J.J., 397 N.J. Super. 91, 99 (App. Div. 2007).

As the trial court previously explained to defendant during the plea hearing, it had no jurisdiction to decide whether defendant was to be deported.  Although the court informed defendant of the Megan's Law consequences that would have applied if he remained or even if he illegally returned to the United

---

[1]  N.J.S.A. 2C:7-1 to -23.

States, it also advised him to assume he would be deported before asking if he wanted to plead guilty. Defendant, who read and understood English and had a high-school education repeatedly confirmed he understood what was disclosed during the plea hearing.

We also concur with the PCR court's assessment that defendant failed to meet the second prong of the Strickland-Fritz test. In that this PCR petition involves a plea agreement, "defendant must show that (i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have [pleaded] guilty and would have insisted on going to trial.'" Nuñez-Valdéz, 200 N.J. at 139 (first alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). The plea agreement called for a three-year sentence. As the court noted in its PCR decision, defendant faced a maximum "aggregate sentence of thirty years state prison on the ten-count indictment, which encompassed three separate offense dates," after which defendant still faced deportation. In its written decision, the PCR court explained the strong proofs the State intended to produce at the trial which was interrupted during jury selection by defendant's decision to plead guilty. Under the circumstances, even if trial counsel was ineffective—which we do not

13

determine or suggest—defendant has failed to show that "but for counsel's [alleged] errors, [he] would not have [pleaded] guilty and would have insisted on going to trial." See ibid. (quoting DiFrisco, 137 N.J. at 457).

Defendant's remaining arguments, including that related to the trial court's alleged violation of Rule 3:22-11, are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1515-18T3