# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4089-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ERICK MARTI, a/k/a ERIC
RODRIGUEZ, ERIK RODRIGUEZ,
JOSE RODRIGUEZ, ERIC MARTI,
and ENRICK MARTI,

    Defendant-Appellant.

_____

Submitted October 29, 2025 – Decided March 20, 2026

Before Judges Gummer and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 16-04-0341.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John V. Molitor, Designated Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Kimberly P. Will, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Erick Marti appeals from an order denying his petition for post-conviction relief (PCR), which the court entered after hearing argument but without conducting an evidentiary hearing. Defendant claims his plea counsel rendered ineffective assistance by failing to investigate defenses of diminished capacity and intoxication. Perceiving no error in the PCR court's finding that defendant did not establish a prima facie case of ineffective assistance of counsel and no abuse of discretion in the court's decision to forgo an evidentiary hearing, we affirm.

Defendant was arrested following an attack that occurred on a New Jersey Transit bus on September 6, 2015. A grand jury subsequently returned an indictment charging defendant with first-degree attempted murder, N.J.S.A. 2C:5-1(a)(3) and N.J.S.A. 2C:11-3; first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(6); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree terroristic threats, N.J.S.A. 2C:12-3(a); third-degree criminal restraint, N.J.S.A. 2C:13-2(a); and third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a).

Pursuant to a negotiated plea agreement, defendant entered a guilty plea to first-degree attempted murder and first-degree aggravated sexual assault. In

A-4089-23

the plea agreement, the State agreed to recommend defendant receive concurrent fifteen-year imprisonment terms, subject to an eighty-five-percent parole-ineligibility period pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. In response to questions from the trial court, defendant testified during the plea hearing he had reviewed the plea form with plea counsel, had signed it, did not have any questions about the plea, and was satisfied with plea counsel's services. As to the charges, defendant admitted he had put his hands around the victim's neck, had attempted to strangle her, and had inserted his finger into her anus while she was unconscious. He testified he had "used some type of drugs" before the attack but was aware of what he was doing at the time of the attack.

As memorialized in a January 14, 2019 judgment of conviction, the court later sentenced defendant in accordance with the plea agreement. Defendant did not appeal the convictions or sentence.

In 2023, defendant, representing himself, moved for "Performance of Forensic DNA Testing," citing N.J.S.A. 2A:84A-32A. The court treated the motion as a PCR petition under Rule 3:22 and assigned counsel. In a brief, PCR counsel argued plea counsel had rendered ineffective assistance by failing "to investigate, engage, or . . . consult a DNA expert" or to raise a diminished-capacity defense, claiming that at the time of the attack defendant "was beside

A-4089-23

himself under the influence of an unknown substance, most likely PCP and that he was not capable of forming the requisite intent to commit the [charged] offenses . . . ."

In support of the petition, defendant submitted a certification "address[ing] issues of ineffective assistance of counsel that put [him] in a position [of] having to plead guilty to aggravated sexual assault." Defendant admitted he had "physically assaulted the victim" and "nearly killed her" but, contrary to the testimony he had given during the plea hearing, denied he had penetrated or sexually assaulted her. He claimed that before the attack, "without [his] knowledge, [he] was given PCP that caused [him] to become angry and aggressive." He stated he "barely remember[ed] getting on the bus" and had "no memory of saying the things the witnesses claim[ed] [he] said," but he knew he "was confused and disoriented."

In the certification, defendant asserted plea counsel had told him "he would not prepare a defense for [him] and would . . . do nothing but attend the status conferences and attempt to negotiate a [plea] deal . . . for [him]." He stated he had asked plea counsel "about a mental health evaluation and possibly presenting a diminished capacity defense" and that plea counsel had "told [him] it was too soon to worry about that because almost all of his cases resulted in

4

plea bargains." He claimed he "suffer[ed] from _____," a condition that "was compounded by [his] unwitting ingestion of PCP," but defendant did not fill in the blank or otherwise identify the condition he allegedly had. He stated he "believe[d] [he] had a viable diminished capacity defense and that [his] overall plea bargain and sentence would have been more favorable if [his] lawyer had bothered to assist [him] to develop that defense." He asserted he "came to believe that [he] had no choice but to plead guilty to protect [him]self from the negative consequences [he] was facing if [he] was convicted after a jury trial."

Defendant attached to his certification a September 6, 2015 hospital record, which indicated defendant had been admitted to the hospital at 9:18 p.m. after police officers brought him to the hospital "for medical clearance and crisis eval[uation] for suicidal thoughts." The record described defendant as "present[ing] to the emergency department with homicidal ideation, psychosis, . . ." and as being "acutely psychotic." It identified a prior diagnosis of "manic behavior," prior symptoms of "homicidal ideation[] [and] suicide ideation," and previous "PCP abuse." Defendant was discharged within nine hours of his admission. The ultimate diagnosis was "Substance Induced Mood Disorder; Cocaine Abuse; Hallucinogen intoxication; [and] cannabis abuse."

5

The PCR record also contained an October 22, 2018 evaluation of defendant prepared by psychologist Jesse Wolpert pursuant to N.J.S.A. 2C:47-1 to -2. Dr. Wolpert described the reasons defendant had given him in an effort to explain "why his behavior was justified and why he was not responsible for his actions." According to Dr. Wolpert, defendant "blamed his behavior on a friend who gave him a cigarette without telling him it was laced with PCP, implying that the effects of the PCP caused him to lose control." Dr. Wolpert noted defendant "could not come up with a reasonable explanation why he had such an extreme reaction to PCP when he admitted using it before and he didn't become violent." Defendant "denied experiencing hallucinations," and Dr. Wolpert found "no evidence of loose associations or delusions, to suggest the presence of a psychotic thought disorder." Dr. Wolpert concluded defendant's "behavior during the present offense is likely due in part to antisocial personality traits and a criminal mindset that permits him to justify the extreme use of violence, callously disregard the impact of his behavior on others, and avoid taking any responsibility for his actions."

At oral argument, PCR counsel advised the PCR court defendant was withdrawing his DNA-based argument and was relying only on his contention plea counsel "should have had [defendant] evaluated for some cognitive deficit,

6

be that a diminished capacity or even possibly a temporary insanity." After hearing argument, the PCR court on August 9, 2024, entered an order and written decision denying defendant's petition. The court held defendant had not established a prima facie case of ineffective assistance of counsel under the two-prong test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42 (1987). The judge found defendant had failed to establish he had received "any mental health diagnosis that would bear on his ability to form the relevant mens rea" and, thus, had failed to demonstrate diminished capacity through mental illness or intoxication. The court also found defendant had failed to demonstrate he would have not pleaded guilty but for plea counsel's alleged ineffective assistance.

Defendant raises the following argument in this appeal:

POINT I

> THIS COURT SHOULD REVERSE THE PCR COURT'S DECISION TO DENY THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING BECAUSE THE DEFENDANT ESTABLISHED A PRIMA FACIE CLAIM THAT HIS COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE THE DEFENSES OF

DIMINISHED CAPACITY AND INTOXICATION.

In the absence of an evidentiary hearing, we review de novo "both the factual inferences drawn from the record" by the PCR court and the court's legal conclusions. State v. Balbosa, 481 N.J. Super. 497, 519 (App. Div. 2025), certif. denied, 262 N.J. 410 (2026). We review a PCR judge's decision to deny a defendant's request for an evidentiary hearing under an abuse-of-discretion standard. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023).

To establish an ineffective-assistance-of-counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 58. "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688, 694). "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012). A failure to satisfy either prong of the Strickland test requires

8

the denial of a PCR petition. Strickland, 466 U.S. at 700; see also State v. Nash, 212 N.J. 518, 542 (2013).

To satisfy the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." State v. Hernandez-Peralta, 261 N.J. 231, 247 (2025) (omission in original) (quoting Strickland, 466 U.S. at 687). Reviewing courts shall afford "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Ibid. (quoting Strickland, 466 U.S. at 689); see also State v. Barclay, 479 N.J. Super. 451, 459 (App. Div.), certif. denied, 259 N.J. 306 (2024). A defendant in a PCR petition also must "overcome a 'strong presumption' that counsel exercised . . . 'sound trial strategy' in fulfilling his [or her] responsibilities." Nash, 212 N.J. at 542 (quoting State v. Hess, 207 N.J. 123, 147 (2011)); see also State v. Young, 474 N.J. Super. 507, 516 (App. Div. 2023).

"Mere dissatisfaction with a 'counsel's exercise of judgment' is insufficient to warrant overturning a conviction." Nash, 212 N.J. at 542 (quoting State v. Echols, 199 N.J. 344, 358 (2009) (internal quotations omitted)). "When raising a claim of ineffective assistance of counsel, a defendant 'must do more than make bald assertions that he [or she] was denied the effective assistance of

counsel. . . ."'" State v. Holland, 449 N.J. Super. 427, 435 (App. Div. 2017) (alteration in original) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). A counsel's alleged "failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990); see also Balbosa, 481 N.J. Super. at 520.

The second prong of the Strickland test "requires the defendant show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Barclay, 479 N.J. Super. at 460 (quoting Strickland, 466 U.S. at 687). The defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Young, 474 N.J. Super. at 516 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 694).

The Strickland test applies "to challenges of guilty pleas based on ineffective assistance of counsel." Balbosa, 481 N.J. Super. at 521 (quoting State v. DiFrisco, 137 N.J. 434, 456 (1994)). "A 'guilty plea must be made voluntarily, knowingly, and intelligently.'" Vanness, 474 N.J. Super. at 624 (quoting State v. J.J., 397 N.J. Super. 91, 98 (App. Div. 2007)).

10

> [T]o set aside a guilty plea based on ineffective assistance of counsel, a defendant must show that (i) counsel's assistance was not within the range of competence demanded of attorneys in criminal cases; and (ii) that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.
>
> [State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (quoting DiFrisco, 137 N.J. at 457).]

See also Balbosa, 481 N.J. Super. at 521. "Plea counsel's performance will not be deemed deficient if counsel has provided the defendant 'correct information concerning all of the relevant material consequences that flow from such a plea.'" Vanness, 474 N.J. Super. at 624 (quoting State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012)). "Stated another way, counsel must not 'provide misleading, material information that results in an uninformed plea.'" Ibid. (quoting Gaitan, 209 N.J. at 353) (internal quotation marks omitted).

To invoke a diminished capacity defense, a defendant must (1) provide evidence of a mental disease "'sufficient to prevent or interfere with the formation of the requisite intent or mens rea[,]' and (2) 'the record contains evidence that the claimed deficiency did affect the defendant's cognitive capacity to form the mental state necessary for the commission of the crime.'" State v. Baum, 224 N.J. 147, 160-61 (2016) (alteration in original) (quoting State v. Galloway, 133 N.J. 631, 647 (1993)). Not every mental disease or defect

merits a diminished-capacity charge. See State v. Reyes, 140 N.J. 344, 360 (1995) (finding evidence regarding the defendant's purported mental disease "did not constitute that quantum of evidence sufficient to support a diminished-capacity charge").

The "prostration of faculties" standard, meaning "defendant was incapable of forming the requisite mental state to commit the crime," State v. Johnson, 309 N.J. Super. 237, 266 (App. Div. 1998), is "the minimum requirement for an intoxication defense," State v. Cameron, 104 N.J. 42, 54 (1986). "[T]he intoxication must be of an extremely high level; it must have caused a 'prostration of faculties' in the defendant." State v. Sette, 259 N.J. Super. 156, 170 (App. Div. 1992) (quoting Cameron, 104 N.J. at 54).

Based on our de novo review, we reach the same conclusion as the PCR court: defendant failed to establish either prong of the Strickland\Fritz test.

Regarding the first prong, as the PCR court found, defendant failed to show by a preponderance of the evidence he had received "any mental health diagnosis that would bear on his ability to form the relevant mens rea" in support of a diminished-capacity defense. Defendant's certification is devoid of testimony that would support a diminished-capacity defense based on mental illness or intoxication. He certified PCP had made him "angry and aggressive,"

and, although he now has a limited memory of what occurred at the time of the attack, he asserts he "was confused and disoriented." He did not testify he was unable to form intent when he attacked the victim. At the plea hearing, defendant testified he was aware of what he was doing at the time of the attack despite "us[ing] some type of drugs" before the attack. The ultimate diagnoses and conclusions of Dr. Wolpert and the doctors who evaluated defendant at the hospital after the attack do "not constitute that quantum of evidence sufficient to support a diminished-capacity charge." Reyes, 140 N.J. at 360. To conclude the one PCP-laced cigarette defendant told Dr. Wolpert he had smoked along with whatever other drugs he may have consumed rendered him incapable of forming the relevant state of mind would be pure speculation. And speculation is not enough to demonstrate ineffective assistance of counsel.

As to the second prong, defendant failed to establish he would not have pleaded guilty but for plea counsel's purported ineffectiveness. His certification does not support that conclusion. Moreover, as the PCR court found, "it would have been irrational" to reject the plea offer considering the multiple charges and potential sentence exposure defendant faced, which included for two charges "life in prison . . . with a possible consecutive sentence of [twenty] years," if he had proceeded to trial. Defendant failed to convince the PCR court

A-4089-23

or this court "that a decision to reject the plea bargain would have been rational under the circumstances." Vanness, 474 N.J. Super. at 624.

A PCR petitioner is not automatically entitled to an evidentiary hearing. State v. Porter, 216 N.J. 343, 355 (2013); see also State v. L.G.-M., 462 N.J. Super. 357, 364 (App. Div. 2020) ("[M]erely raising a claim for PCR does not entitle a defendant to an evidentiary hearing."). A court should hold an evidentiary hearing on a PCR petition only if the defendant establishes a prima facie case in support of PCR, "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and "an evidentiary hearing is necessary to resolve the claims for relief." R. 3:22-10(b); see also L.G.-M, 462 N.J. Super. at 364-65. Defendant did not meet that standard. Accordingly, the PCR court did not abuse its discretion by deciding the petition while forgoing an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division